This is an action to recover damages for personal injuries sustained by plaintiff while in the service of the Boston and Albany Railroad Company as a telegraph operator at East Greenbush, Rensselaer county, on the afternoon of Sunday, March 6th, 1910. The duties of the plaintiff were mostly performed in a little building called a lobby which is furnished with telegraph instruments and switches to be operated by the person in charge. This lobby was connected by telegraph with a general office of the railroad company at Springfield to which the plaintiff was accustomed to make reports and from which he received orders to be communicated to passing trains. On the evening in question a passenger train numbered 361 was due from Springfield at the East Greenbush lobby at about 6:33 P.M. going west toward Albany. Ordinarily such a train would not stop at that point; but shortly before it was due the plaintiff received a message from Springfield which read substantially as follows: "To *Page 115 
the conductor and engineer on 361, East Greenbush lobby. Landslide about one-quarter mile west of East Greenbush lobby; do not run into it."
Upon receiving this telegram plaintiff took a red lantern and went out. He says it was then dusk — not real dark but dark enough to have light instead of signals. As soon as train No. 361 came in sight about a quarter of a mile off he began to signal it to stop by swinging his light across the track. There was a general custom of the railroad pursuant to which an engineer when signaled to stop responded to the signal by giving two blasts of the whistle. The plaintiff heard no such blasts but remained on the track until the train had approached within about sixty feet of him when he stepped off to a side path of trap rock about two feet below the track level. Here he shouted to the engineer to stop, holding his lantern in his hand right in front of him when the deadwood of the locomotive struck his hand and the lantern, injuring his hand and breaking the lantern all to pieces. According to the plaintiff the train proceeded about a quarter of a mile beyond the lobby and then came to a stop.
According to the testimony of the engineer and fireman on the train they did not see the plaintiff's red lantern or discover his signal to stop the train although maintaining a watchful lookout as they approached the East Greenbush lobby. It appeared, however, that another red light was observed by the fireman when the train was about six hundred feet east of the lobby. He exclaimed to the engineer "Red light!" whereupon the engineer applied what he calls a good hard service brake, thus checking the speed of the train and bringing it to a stop at a point which he fixed as about five hundred or six hundred feet west of the lobby. As the engine passed the place where the plaintiff stood the engineer saw a flash of white light but nothing more.
Upon these facts a verdict has been rendered charging *Page 116 
the defendant railroad corporation with negligence by reason of the failure of the engineer to heed the plaintiff's red light signal and signify to the plaintiff by two blasts of the engine whistle that he had perceived it, or else stop the train before it reached the East Greenbush lobby. All the members of the court agree that in order to render the defendant liable it must appear that the engineer omitted the performance of some duty which he owed the plaintiff — the point of difference between us being as to whether the proof establishes any such duty the omission of which caused the accident. For myself I am unable to see how the failure either to whistle twice or to bring the train to a complete stop before passing the lobby constituted in any real sense the cause of the accident to the plaintiff. There was nothing in the duties imposed upon him which contemplated his exposure to any danger whatever from an approaching train which he knew was coming and the precise position of which he was able to observe in its progress toward him. Of course, having been warned that there was a landslide on the line to the west which might endanger any train proceeding so far, it was incumbent upon the plaintiff to do all that he could with the means provided for that purpose to stop the oncoming train before it should reach the point of danger. This did not mean, however, that he was expected to imperil his own life or limb, nor did he so understand it. According to his own testimony, as soon as the engine was in dangerous proximity he stepped off the track to one side; this he had ample time to do, and it is perfectly plain from the details of the narrative that he supposed himself to be out of the way of the locomotive when his hand was struck. It seems to me that his injury is attributable to his mistaken estimate of his own position in the dusk. Can it fairly be said that this mistake was due to any want of care on the part of the engineer? I think not.
The case is not one in which, owing to carelessness on *Page 117 
the part of those in charge of a railway train, a sudden emergency arises in which an employee exposes himself to great peril for the sake of saving lives apparently in danger. Here the plaintiff had no idea of exposing himself to any risk. He realized that his signal had not been observed and he meant to get off the track into a safe place and warn the engineer so far as he could prudently do so as the train went by him. It was simply a miscalculation on his part as to his position which led to the accident. He thought he had reached a place of safety and in fact he had done so and would have remained unharmed if he had not projected his arm too far toward the locomotive. The intention with which he acted was undoubtedly praiseworthy, but I cannot perceive that the unfortunate result should induce us to place any blame on the engineer.
For these reasons I favor a reversal of this judgment, and the granting of a new trial, costs to abide event.
WERNER, HISCOCK, COLLIN and CUDDEBACK, JJ., concur; MILLER and CARDOZO, JJ., dissent.
Judgment reversed, etc.